1

1

2          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
3
                    - - - - -
4
    UNITED STATES OF        )
5   AMERICA,                )
                            )
6          Plaintiff,       )
                            )
7          vs.              ) 08-423
                            )
8   JUSTIN SMITH,           )
                            )
9          Defendant.       )

10                    - - - - -

11                         U.S.P.O. and Courthouse
                          Courtroom 8A
12                        700 Grant Street
                          Pittsburgh, PA  15219
13                        Wednesday, July 21, 2010
                          1:00 p.m.
14
                    - - - - -
15

16   BEFORE:  THE HONORABLE MAURICE B. COHILL, JR.

                    - - - - -
17
                    CHANGE OF PLEA
18
                  REDACTED TRANSCRIPT
19
                TRANSCRIPT OF PROCEEDINGS
20
                    - - - - -
21                       Reported by:

22                       Lee Ann Reid
                         Court Reporter
23                    - - - - -

24   REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
    WITHOUT AUTHORIZATION FROM THE CERTIFYING
25   AGENCY

2

1

2      <u>COUNSEL PRESENT</u>:

3      For the United States Government:

4           Faithe Moore Taylor, Esq.
            U.S. Attorneys Office
5           Eastern District of Pennsylvania
            615 Chestnut Street, Suite 1250
6           Philadelphia, PA  19106
                       And
7           Jason P. Bologna, Esq.
            U.S. Attorneys Office
8           Eastern District of Pennsylvania
            615 Chestnut Street, Suite 1250
9           Philadelphia, PA  19106

10

       For the Defendant:
11
            Thomas Livingston, Esq.
12          Federal Public Defenders Office
            Western District of Pennsylvania
13          1500 Liberty Center
            1001 Liberty Avenue
14          Pittsburgh, PA  15222

15                      - - - - -

16

17

18

19

20

21

22

23

24

25

3

1

2                      P R O C E E D I N G S

3                          - - - - -

4                  (Call to Order of the Court.)

5                  JUDGE MAURICE B. COHILL, JR.:

6      Mr. Livingston, as I understand it, your client

7      has indicated a desire to enter a plea of

8      guilty today; is that correct?

9                  MR. THOMAS LIVINGSTON:  Yes,

10     Your Honor.

11                 THE COURT:  Will you stand and

12     be sworn, please.

13                 (The Defendant is sworn.)

14                 THE COURT:  Would you state

15     your name for the record, please.

16                 MR. JUSTIN SMITH:  Justin

17     Smith.

18                 THE COURT:  Mr. Smith, do you

19     understand that you have been sworn and your

20     answers to my questions will be given under

21     oath so that you would be subject to the

22     penalties of perjury or making false statements

23     if you don't answer truthfully?

24                 THE WITNESS:  Yes, sir.

25                 THE COURT:  What's your date

4

1                      - - - - -

2     of birth?

3                    THE WITNESS:  November 9,

4     1988.

5                    THE COURT:  And what is your

6     address?

7                    THE WITNESS:  318 South Enola

8     Drive, Enola, Pennsylvania.

9                    THE COURT:  How far did you go

10    in school?

11                   THE WITNESS:  10th grade.

12                   THE COURT:  Mr. Livingston,

13    have you been able to communicate with your

14    client in a sense that you believe he

15    understands you and you understand him?

16                   MR. LIVINGSTON:  Yes, I have,

17    Judge.

18                   THE COURT:  Mr. Smith, are you

19    currently or have you recently been under the

20    care of a physician or a psychiatrist?

21                   THE WITNESS:  No, sir.

22                   THE COURT:  Have you been

23    hospitalized or treated for a narcotic

24    addiction?

25                   THE WITNESS:  No, sir.

5

1                          - - - - -

2                     THE COURT:  Have you been

3      hospitalized or treated for alcohol abuse?

4                     THE WITNESS:  No, sir.

5                     THE COURT:  Have you been

6      hospitalized or treated for any sort of mental

7      illness?

8                     THE WITNESS:  No, sir.

9                     THE COURT:  Are you under the

10     influence of any narcotic, drug, medicine,

11     pill, or alcoholic beverage today?

12                    THE WITNESS:  No, sir.

13                    THE COURT:  Have you taken any

14     drugs, medicine, or pills, or have any

15     alcoholic beverages in the past 24 hours?

16                    THE WITNESS:  No, sir.

17                    THE COURT:  How do you feel

18     physically and mentally right now?

19                    THE WITNESS:  Excuse me?

20                    THE COURT:  How do you feel

21     physically and mentally right now?

22                    THE WITNESS:  Fine.

23                    THE COURT:  Are you clear in

24     understanding exactly what's happening here

25     now?

6

1                          - - - - -

2                  THE WITNESS:  Yes, sir.

3                  THE COURT:  Do either of you

4      attorneys have any data as to Mr. Smith's

5      competency at this time?

6                  MR. LIVINGSTON:  No, I don't,

7      Your Honor.

8                  MS. FAITHE MOORE TAYLOR:  No,

9      Your Honor.

10                  THE COURT:  Based on the

11     answers to the foregoing questions, I find that

12     Mr. Smith is competent to plead.

13                  Have you had an ample opportunity to

14     discuss your case with your attorney?

15                  THE WITNESS:  Yes, sir.

16                  THE COURT:  Have you told him

17     all the facts in connection with the charges?

18                  THE WITNESS:  Yes, sir.

19                  THE COURT:  Are you satisfied

20     with the job that he has done for you?

21                  THE WITNESS:  Yes, sir.

22                  THE COURT:  I want to go over

23     with you now just what your rights would be,

24     what your constitutional rights would be if

25     this case were to go to trial, Mr. Smith.

7

1                    - - - - -

2              First of all, do you understand that

3    under the constitutional laws of the United

4    States you are entitled to a speedy and a

5    public trial by a jury on the charges contained

6    in the Indictment?

7                    THE WITNESS:  Yes, sir.

8                    THE COURT:  Do you understand

9    that you had the right to an attorney at every

10   stage of the proceedings in your case and that

11   if at any time you can't afford an attorney,

12   one will be provided for you without charge?

13                   THE WITNESS:  Yes, sir.

14                   THE COURT:  Do you understand

15   that at your trial you would be presumed to be

16   innocent and the Government would be required

17   to prove you guilty by competent evidence and

18   beyond a reasonable doubt to the satisfaction

19   of the Judge and a unanimous jury?

20                   THE WITNESS:  Yes, sir.

21                   THE COURT:  Do you understand

22   that being presumed to be innocent means that

23   you would not have to prove that you were

24   innocent?

25                   THE WITNESS:  Yes, sir.

8

1                      - - - - -

2                      THE COURT:  Do you understand

3      that at the trial the witnesses for the

4      Government would have to come to Court and

5      testify in your presence and your attorney or

6      you could cross-examine the witnesses for the

7      Government, object to evidence offered by the

8      Government, and offer evidence on your behalf?

9                      THE WITNESS:  Yes, sir.

10                     THE COURT:  Do you understand

11     that at the trial you would be entitled to

12     compulsory process to call witnesses; that is

13     you could subpoena witnesses and compel them to

14     come to Court to testify for you?

15                     THE WITNESS:  Yes, sir.

16                     THE COURT:  Do you understand

17     that at the trial you will have the right to

18     testify if you chose to do so, but you would

19     also have the right not to testify and no

20     inference or suggestion of guilt would be drawn

21     from the fact that you did not testify?

22                     THE WITNESS:  Yes, sir.

23                     THE COURT:  If you do enter a

24     plea of guilty today, you understand that you

25     will be waiving your right to a trial and the

9

1                          - - - - -

2       other rights that I have just described and

3       there will not be a trial of any kind and I

4       will enter a judgment of guilty and sentence

5       you on the basis of your guilty plea after

6       considering the presentence report?

7                     THE WITNESS:  Yes, sir.

8                     THE COURT:  If you do enter a

9       plea of guilty today, do you understand that

10      you will also have to waive your right not to

11      incriminate yourself since I will ask you

12      questions about what you did in order to

13      satisfy myself that you are guilty and you will

14      have to acknowledge your guilt on the record?

15                    THE WITNESS:  Yes, sir.

16                    THE COURT:  Do you understand

17      that any statements regarding the events that

18      you may have made to the US Attorney during the

19      course of any plea negotiations could not be

20      used against you in a trial in this case?

21                    THE WITNESS:  Yes, sir.

22                    THE COURT:  Having discussed

23      these rights with you, is it still your wish to

24      enter a plea of guilty today?

25                    THE WITNESS:  Yes, sir.

10

1                         - - - - -

2                    THE COURT:  Have you received

3        a copy of the Indictment that was filed in this

4        case?

5                    THE WITNESS:  Yes, sir.

6                    THE COURT:  Have you discussed

7        with Mr. Livingston the charges in the

8        Indictment to which you intend to plead guilty?

9                    THE WITNESS:  Yes, sir.

10                   THE COURT:  Just for the

11       record, I think it's going to be a good idea

12       for me to read these to you.  There are four

13       counts here.

14                   Count 1 of the Indictment charges --

15       I'm quoting -- "On or about May 16, 2007 in

16       Summerdale in the Middle District of

17       Pennsylvania Defendant Justin Smith knowingly

18       and intentionally distributed a mixture and

19       substance containing a detectable amount of

20       4-methyl-2,5" -- that's dimethoxyamphetamine --

21       "also known as Nexus or DOM, D-O-M, which is a

22       Schedule I controlled substance which resulted

23       in serious bodily injury to a person in

24       violation of 21 United States Code Section 841,

25       Subsections (a)(1), (b)(1)(C)."  And that

- - - - -

1          - - - - -

2     section of the Code makes it a crime to

3     knowingly and intentionally distribute a

4     controlled substance such as DOM or Nexus which

5     results in serious bodily injury.

6               Do you understand that?

7                    THE WITNESS:  Yes, sir.

8                    THE COURT:  And the shorthand

9     name for that count is just distribution

10    causing serious bodily injury.

11              Then the second one is, the

12    shorthand one for that is just called

13    distribution.

14              And Count 2 of the Indictment

15    charges that, "On or about May 16, 2007 in

16    Summerdale in the Middle District of

17    Pennsylvania Defendant Justin Smith knowingly

18    and intentionally distributed a mixture and

19    substance containing a detectable amount of

20    4-methyl-2,5 dimethoxyamphetamine also known as

21    Nexus or DOM, a Schedule I controlled substance

22    in violation of Title 21 United States Code

23    Section 841, Subsections (a)(1), (b)(1)(C)."

24    And that particular section makes it a crime to

25    knowingly and intentionally distribute a

12

1                          - - - - -

2     controlled substance such as DOM or Nexus.

3              And in the law where we talk about

4     something as not knowingly and intentionally,

5     by knowingly we mean that you knew what you

6     were doing when you made some mistake that you

7     made.  And intentionally is that you intended

8     to, whatever act you took, that you did that on

9     purpose.

10             Do you understand all of that?

11             THE WITNESS:  Yes, sir.

12             THE COURT:  Then Count 3 which

13    is distribution to a person under 21.  And

14    Count 3 states that, "On or about May 16, 2007

15    in Summerdale in the Middle District of

16    Pennsylvania the Defendant Justin Smith, being

17    over the age of 18, knowingly and intentionally

18    distributed a mixture and substance containing

19    a detectable amount of 4-methyl-2,5

20    dimethoxyamphetamine also known as Nexus or

21    DOM, a Schedule I controlled substance to a

22    person under 21 years of age that is in

23    violation of Title 21 United States Code

24    Section 841, Subsections (a)(1), (b)(1)(C)."

25    And Section 859(a) of Title 21 provides for

13

1                        - - - - -

2    enhanced penalties for knowingly and

3    intentionally distributing a controlled

4    substance such as DOM or Nexus to a person

5    under 21 years of age.

6              And then Count 4, which is simply

7    possession, that states that, "On or about

8    May 16, 2007 in Summerdale in the Middle

9    District of Pennsylvania, the Defendant Justin

10   Smith knowingly and intentionally possessed a

11   mixture and substance containing a detectable

12   amount of 2,5 dimethoxyamphetamine known as

13   Nexus or DOET" -- D-O-E-T -- "a Schedule I

14   controlled substance" -- note this is a

15   different chemical composition than the drug

16   known as DOM, D-O-M -- "in violation of Title

17   21 United States Code Section 844a."  And that

18   particular section makes it a crime to

19   knowingly and intentionally possess a

20   controlled substance such as DOET or Nexus.

21              Do you understand that?

22                   THE WITNESS:  Yes, sir.

23                   THE COURT:  Do you have any

24   question about what you've been charged with

25   here?

14

1                      - - - - -

2                   THE WITNESS:  No, sir.

3                   THE COURT:  Now, I want to go

4      over with you now just what the Government

5      would have to prove if this case were to go to

6      trial.  In any criminal case the Government has

7      to prove certain elements upon each count.

8      These are the elements of the offense for each

9      of the counts which we're talking about here.

10                  For distribution causing seriously

11     bodily injury, they have to prove that you

12     knowingly or intentionally possessed a

13     controlled substance, namely 4-methyl-2,5

14     dimethoxyamphetamine also known as Nexus, also

15     known as DOM, that you distributed that

16     substance, that you knew that the substance was

17     a controlled substance; in other words,

18     controlled by the law.  And, last, that serious

19     bodily injury resulted from the use of the

20     controlled substance.  That's what they would

21     have to prove for Count 1.

22                  Do you understand that?

23                  THE WITNESS:  Yes, sir.

24                  THE COURT:  Now, for Count 2,

25     distribution, to establish that they would have

15

1                        - - - - -

2      to prove that you knowingly or intentionally

3      possessed a controlled substance, namely

4      4-methyl-2,5 dimethoxyamphetamine also known as

5      Nexus, also known as DOM, D-O-M, that you

6      distributed that controlled substance, and that

7      you knew the substance was a controlled

8      substance.

9                  Then for Count 3, that's

10     distribution of a person under age 21, to

11     establish that violation, they would have to

12     prove -- then, of course, in each of these

13     cases, they would have to prove it to the

14     satisfaction of the Judge and a unanimous jury.

15     They would have to prove that you knowingly or

16     intentionally possessed a controlled substance,

17     namely 4-meythl-2,5 dimethoxyamphetamine also

18     known as Nexus, also known as DOM, that you

19     distributed that substance, and that you knew

20     that the substance was a controlled substance.

21                  The fourth thing they would have to

22     prove is that you were at least 18 years of age

23     at the time of the distribution and that the

24     victim was under the age of 21 years of age.

25                  Do you understand all of that?

16

1                    - - - - -

2                    THE WITNESS:  Yes, sir.

3                    THE COURT:  Then the last

4      count is possession.  And there they would have

5      to prove that you knowingly or intentionally

6      possessed a controlled substance, namely

7      4-methyl-2,5 dimethoxyamphetamine also known as

8      Nexus also known as DOM, that you knew that the

9      substance was a controlled substance, and that

10     you did not possess the controlled substance

11     pursuant to a valid prescription; in other

12     words, you didn't have a prescription for it.

13                    Do you understand that?

14                    THE WITNESS:  Yes, sir.

15                    THE COURT:  Do you have any

16     questions about what you're charged with here?

17                    THE WITNESS:  No, sir.

18                    THE COURT:  I think I already

19     did define knowingly and intentionally, but let

20     me do that again.  The term knowingly means

21     that you were conscious and aware that you were

22     engaged in the act charged and knew the

23     surrounding facts and circumstances that make

24     out the offense.  And intentionally, when we

25     say intentionally that means to act

17

1                    - - - - -

2     deliberately and not by accident or mistake

3     and/or inadvertently.

4              Do you understand that?

5                   THE WITNESS:  Yes, sir.

6                   THE COURT:  Now, I want to go

7     over with you the possible penalties here.  And

8     there are two kinds of penalties that we have

9     to consider.  First of all is what is the

10    United States Code, what does the Statute say

11    about the penalties for these violations.  And

12    then, secondly, the Court also has to consider

13    the so-called Sentencing Guidelines.

14              First of all, let me tell you what

15    the Statute says about them.  On the first

16    count, distribution of a controlled substance

17    that results in serious bodily injury, that

18    calls for a statutory term of imprisonment of

19    not less than 20 years to a maximum of life.

20    That is, the minimum sentence you face is 20

21    years and the maximum that you face is life

22    imprisonment.  It also calls for a mandatory

23    minimum of three years of supervised release up

24    to a lifetime of supervised release and a fine

25    of one million dollars.

18

1                          - - - - -

2                  Now, the second count for violation

3       of distribution of a controlled substance,

4       you're subject to a maximum term of

5       imprisonment of 20 years, a mandatory minimum

6       of 3 years of supervised release up to a

7       lifetime of supervised release, and a fine of

8       one million dollars.

9                  At Count 3 for violation of

10      distribution of a controlled substance to a

11      person under 21 years of age you're subject to

12      a statutory mandatory minimum of imprisonment

13      of 1 year to a maximum sentence of 40 years

14      imprisonment, a mandatory minimum of 6 years

15      supervised release up to a lifetime of

16      supervised release, and a fine of 2 million

17      dollars.

18                 Then on Count 4, possession of a

19      controlled substance, you're subject to a

20      maximum term of imprisonment of 1 year and a

21      fine of $1,000.

22                 And in addition to those statutory

23      penalties that I have just mentioned, we're

24      also required to impose a so-called special

25      assessment of $100 on each count.  So in this

19

1                         - - - - -

2        case it would be $400 for four counts.

3                  So, in other words, you're looking

4        at a total maximum sentence here of life

5        imprisonment with a mandatory minimum of 20

6        years, a lifetime of supervised release with a

7        mandatory minimum of 6 years supervised

8        release, and fines totaling 4 million $1,000

9        and a $400 special assessment.

10                 Do you understand all of that?

11                     THE WITNESS:  Yes, sir.

12                     THE COURT:  Now, have you and

13       Mr. Livingston talked about how Sentencing

14       Guidelines might apply in this case?

15                     THE WITNESS:  Yes, sir.

16                     THE COURT:  You understand

17       that the Supreme Court a few years ago, the

18       Supreme Court of the United States a few years

19       ago in a ruling said that the District Courts

20       are not required to follow the Sentencing

21       Guidelines, but we have to figure out what the

22       Guideline calls for in order to arrive at --

23                 Well, we look to them more or less

24       in an advisory way.  And we have to figure out

25       what the Guideline is in order to arrive at

20

1                    - - - - -

2    what hopefully will be a fair and just

3    sentence.

4                    You understand that I wouldn't be

5    able to determine the Guideline Sentence for

6    your case until after a presentence report has

7    been completed and you and the Government had

8    an opportunity to challenge any facts recorded

9    by the probation officer that you might

10   disagree with?  Do you understand that?

11                    THE WITNESS:  Yes, sir.

12                    THE COURT:  Do you understand

13   that the sentence might be different from what

14   either your attorney or the United States'

15   attorney predicted?

16                    THE WITNESS:  Yes, sir.

17                    THE COURT:  Do you understand

18   that after it's been determined what Guideline

19   applies in the case, the Judge has the

20   authority in some circumstances to impose a

21   sentence that's more severe or less severe than

22   the sentence called for by the Guidelines?

23                    THE WITNESS:  Yes, sir.

24                    THE COURT:  Do you understand

25   that -- and as I understand it, there is a Plea

21

1                    - - - - -

2     Agreement here which we'll get to in a few

3     minutes.  But under some circumstances you or

4     the Government may have the right to appeal any

5     sentence that the Court might impose what would

6     be within the conditions that are set out in

7     your plea?  Do you understand that?

8                    THE WITNESS:  Yes, sir.

9                    THE COURT:  Mr. Smith, has

10    anyone threatened you or anyone else or forced

11    you in any way to indicate you want to plead

12    guilty in this case?

13                   THE WITNESS:  No, sir.

14                   THE COURT:  Have you made

15    or -- Mr. Livingston, has he made any

16    confession or omissions to the police or other

17    representatives of the Government concerning

18    this matter?

19                   MR. LIVINGSTON:  Yes, Your

20    Honor.  One aspect of the discovery is a

21    summary of that.  And in the context of

22    reviewing that statement, the one document we

23    received verified that it was made after

24    Miranda Warnings were --

25                   THE COURT:  I'm sorry?

22

1                         - - - - -

2                         MR. LIVINGSTON:  There are two

3       different pieces of discovery that refers to

4       that statement, and you're going to hear one

5       aspect of it in the factual basis here today.

6       Included in the advice of rights preceding

7       statement was Miranda Warnings.  We discussed

8       the prospect of filing pretrial motions.  One

9       of those potential motions would have been a

10      motion to suppress, but consistent with my

11      advice, Mr. Smith is electing to not file a

12      motion to suppress that statement.

13                         THE COURT:  If you have any

14      feeling that that confession or omission or

15      statement was not freely and voluntarily made,

16      you would, as Mr. Livingston says, have the

17      opportunity to have a suppression hearing for

18      me to determine whether or not that statement

19      was voluntarily made.

20                         Are you agreeing with Mr. Livingston

21      that you don't think you need to have that

22      hearing?

23                         THE WITNESS:  Yes, sir.

24                         THE COURT:  And I have seen

25      the Plea Agreement.  I understand it and have

23

1                    - - - - -

2     reviewed it, but I'm going to ask the

3     Government, if you would, just give us a

4     summary of what's in that Plea Agreement.  Then

5     I'm going to ask Mr. Smith and Mr. Livingston

6     if they agree with Ms. Moore's statement of

7     what's in the Agreement.

8                    MS. MOORE TAYLOR:  Yes, Your

9     Honor.  The summary of the Agreement between

10    the Government and Mr. Smith and his Counsel is

11    as follows:  ██████████████████████████

12    ████████████████████████

13    ██████████████████████████

14    ████████████████████████████

15    ██████████████████████████

16    ██████████████████████

17    ████████

18         ████████████████████

19    ██████████████████████

20    ███████████████████████

21    █████████████████████

22    █████████████████████████████

23    ██████████████████████████

24    ██████████████████████████

25    ██████████████████████

24

- - - - -



    I believe, Your Honor, those are the essential terms of the Agreement between the Government and Mr. Smith.

    THE COURT:  Okay. Mr. Livingston, is that consistent with your understanding of the major contents of the Agreement?

    MR. LIVINGSTON:  Yes.  One other aspect that's specified in the Agreement is that the Government is agreeing that under 3B1.1 of the Sentencing Guidelines, that Mr. Smith is entitled to a three level reduction in the offense level.  The language of the Appellate Waiver as we have reviewed it

25

1                          - - - - -

2       is in many respects similar to the waiver

3       language that we are familiar with in this

4       district.  And I assume the Court is going to

5       want to note the colloquy about that topic.

6                       THE COURT:  Mr. Smith, is your

7       hearing what Ms. Moore had to say and what

8       Mr. Livingston had to say consistent with your

9       understanding of what's in the Plea Agreement?

10                      THE WITNESS:  Yes, sir.

11                      THE COURT:  Has anyone made

12      any representation or promise other than what's

13      in that Plea Agreement that convinced you to

14      plead guilty today?

15                      THE WITNESS:  No, sir.

16                      MR. LIVINGSTON:  Judge,

17      there's one topic that I discussed with both

18      the Government and with Mr. Smith and it

19      relates to bail status following today's

20      hearing.  And the Government is recommending

21      that Mr. Smith remain released on bail pursuant

22      to the terms of the order.

23                      THE COURT:  That was my

24      understanding.

25                      MS. MOORE TAYLOR:  Yes, Your

26

1                    - - - - -

2       Honor.

3                    THE COURT:  Mr. Smith, it is

4       very important that I've been told all of the

5       relevant bargaining that's taken place because

6       I want to guard against any possible

7       misunderstanding of the terms of the Plea

8       Bargain.  Is there any representation made by

9       the United States Attorney that is not

10      absolutely clear in your mind?

11                   THE WITNESS:  No, sir.

12                   THE COURT:  You understand

13      that any recommendation of sentence that might

14      have been agreed to by your lawyer and the

15      prosecution or any agreement by the Government

16      not to oppose your attorney's requested

17      sentence is not binding on me and you might on

18      the basis of your Guilty Plea receive up to the

19      maximum sentence permitted by law?

20                   THE WITNESS:  Yes, sir.

21                   THE COURT:  You understand

22      that if I choose not to impose a sentence that

23      might be recommended by the Government or by

24      your lawyer and impose a more severe sentence,

25      you will not, therefore, be entitled to

27

1                     - - - - -

2      withdraw a guilty plea?

3                     THE WITNESS:  Yes, sir.

4                     THE COURT:  Has anyone made

5      any prediction or promise to you as to what the

6      sentence will be?

7                     THE WITNESS:  No, sir.

8                     THE COURT:  Have any

9      out-of-Court promises, representations, or

10     agreements been made which require you to

11     respond untruthfully to any of my questions?

12     For instance, has anyone told you to tell me

13     that no promise of leniency was made when, in

14     fact, a promise was so made?

15                    THE WITNESS:  No, sir.

16                    THE COURT:  You understand

17     that you may not at a later date after today

18     claim that there were any promises,

19     representations, agreements, understandings, or

20     threats made by any person that motivated or

21     caused you to enter this Plea other than those

22     that you had the opportunity to tell me about

23     here and now in open Court.  Do you understand

24     that?

25                    THE WITNESS:  Yes, sir.

28

1                    - - - - -

2                    THE COURT:  Do you understand

3      that no one can make promises for me as to how

4      I will dispose of a case?

5                    THE WITNESS:  Yes, sir.

6                    THE COURT:  Has anyone

7      promised or predicted leniency with respect to

8      any sentence that I might impose?

9                    THE WITNESS:  No, sir.

10                    THE COURT:  It's very

11     important, because if anyone has predicted or

12     promised leniency, I'm putting you on notice

13     right now that any representation that they

14     have made is not binding on me and I will

15     sentence you according to my own conscious and

16     in following the law.  You completely

17     understand this?

18                    THE WITNESS:  Yes, sir.

19                    THE COURT:  What made you

20     decide to plead guilty, Mr. Smith?

21                    MR. LIVINGSTON:  Judge, I'm

22     going to comment on -- as we've been reviewing

23     this case and looking at the factual elements

24     of the case, there were several postponements,

25     some of them based on ongoing discussions

29

- - - - -

between the Government and me about one of the

essential elements of Count 1, which is the

term serious bodily injury.

As time progressed, we filed a

motion to compel discovery regarding expert

testimony, and that generated the production of

grand jury testimony of the treating doctor

which you'll hear about in a minute as well as

an Affidavit he prepared.  You're going to hear

the factual basis about the events and

consistent with his admission out of Court,

it's been my ongoing discussion with Justin

Smith that as far as the evidence goes,

including his admission, that there is a

sufficient factual basis.  We were not sure

about Count 1 until we saw the opinion of the

Doctor in the Affidavit.

But as far as Count 1, which is the

one that triggers the 20 year minimum in this

case, the other counts sort of ride the tail of

that based on the factual basis you're about to

hear.  So my advice to Justin Smith is that

there is, in fact, a factual basis and included

in the Plea Agreement with the 5K 3553(b)

- - - - -

1   - - - - -

2   language and 3B1.1 language, the curious thing

3   is Justin Smith could, quote, go to trial and

4   win on Count 1 but still be subject to the same

5   Guideline range and even higher without the

6   acceptance of responsibility because the

7   Guideline definition of serious bodily injury

8   is easier for the Government to prove and

9   doesn't require the Affidavit of the treating

10  emergency room doctor that you'll hear about.

11          So my advice which Mr. Smith has

12  chosen to follow is that there's a sufficient

13  factual basis and the consideration of the Plea

14  Agreement is substantial and the risk of going

15  to trial was far too great to risk the verdict

16  of guilty and a 20 year mandatory minimum.

17          THE COURT:  You're telling me

18  that you're admitting today that you are guilty

19  as charged in the four counts?

20          THE WITNESS:  Yes, sir.

21          THE COURT:  I'm going to ask

22  now for Ms. Moore or Mr. Bologna to tell me

23  what happened here and what the Government

24  would expect to be able to prove.  Then, again,

25  I'm going to ask you and Mr. Livingston if you

31

1                          - - - - -

2      agree with her statement of the events of the

3      case.

4                          MS. MOORE TAYLOR:  May I

5      proceed, Your Honor?

6                          THE COURT:  Yes.

7                          MS. MOORE TAYLOR:  If this

8      matter were to go to trial, the Government

9      would present the following evidence.  We have

10     filed a fairly significant factual basis.  I am

11     going to try to summarize that for the Court.

12                          THE COURT:  I have read that.

13                          MS. MOORE TAYLOR:  On or about

14     May 16 of 2007 John Jones drove Erik Brandler

15     to Justin Smith's home at 400 Boyer Street in

16     Summerdale, Pennsylvania.  The purpose of Erik

17     wanting to go there was to purchase 2C-B from

18     Justin Smith.  When Jones reached Smith's home,

19     he dropped Brandler off and he left the area.

20             Interviews with different witnesses

21     including Mr. Brandler and others who were at

22     the Smith home that night revealed the

23     following:  Brandler went into the home and met

24     with Justin Smith and his then girlfriend Dawn

25     Baker.  Baker was interviewed and recalled that

32

                              - - - - -

1

2    she and Smith both told Brandler not to do too

3    much of the 2C-B because they didn't know how

4    potent this batch was.

5                   While Baker never saw Brandler

6    ingest the drugs, she returned to the room and

7    later found Brandler in Smith's front yard

8    groggy and hallucinating.  Justin Smith told

9    Baker that Brandler, in fact, had taken too

10   much 2C-B and that Brandler had snorted it.

11                  During that time for the next five

12   or six hours different individuals came to the

13   Smith home and partied there.  These

14   individuals interacted with Brandler, tried to

15   talk to Brandler, observed his deteriorating

16   condition, attempted to get him to focus.  He

17   was unable to focus.  Attempted to speak to

18   him.  He was unable to respond coherently.

19   They tried, including Mr. Smith, to get him to

20   drink water, but he was unable to understand

21   what they were saying.  Consequently, unable to

22   follow their direction.

23                  After several hours passed and after

24   observing Brandler's condition, Justin Smith

25   and two other individuals, Troy Eppley and

1                          - - - - -

2       Joseph Mishalko, made a decision to take Erik

3       Brandler home to his parents so that they could

4       deal with the situation.  They got Brandler out

5       of the car and left him on his parents' front

6       lawn.  They then took Brandler's cell phone and

7       called Brandler's home.  The phone was answered

8       by Bruce Brandler, Erik Brandler's father.  And

9       he was told that his son was on the lawn and he

10      needed help.  Mr. Brandler recalled that he

11      received that call at approximately 11:30 that

12      night.  And he asked the other person on the

13      other end of the phone to identify themselves.

14      They would not.  Based on what this caller

15      said, Mr. Brandler proceeded to go outside and

16      there he encountered his son Erik.  He

17      described Erik's condition as incoherent and

18      had him immediately rushed to Holy Spirit

19      Hospital.  He was then transferred to

20      Harrisburg Hospital where he received treatment

21      for an apparent drug overdose.

22              The Brandlers did not know when they

23      encountered their son what drug they had taken.

24      So Erik's mother retrieves his cellphone and

25      began to call the individuals that were listed

34

1                    - - - - -

2       there.  She called John Jones who shared with

3       her the information we just related to the

4       Court.  Jones also admitted to taking Erik to

5       Justin Smith's home to purchase 2C-B.

6                    Erik Brandler was later after he was

7       treated spoken to at the hospital.  He admitted

8       to his mother that he had, in fact, taken 2C-B

9       and that he had gotten it from Justin Smith.

10                   This information was relayed to the

11      police and on May 19, 2007 a search warrant was

12      executed at Justin Smith's home.  At the time

13      the search warrant was executed, both Justin

14      Smith and Dawn Baker were inside of the home.

15      Justin Smith was given his Miranda Rights after

16      which he directed the officers to the location

17      of drugs in his home and drug paraphernalia.

18      And that direction resulted in the recovery of

19      the following items:  There was white powder in

20      a clear plastic bag that was within a clear

21      Ziploc bag located under the keyboard on

22      Mr. Smith's desk.  A blue pipe with residue was

23      found inside of a black bag in his desk.  A

24      clear sandwich bag containing a green leafy

25      substance was also found inside the black bag.

35

1                      - - - - -

2       A multicolor pipe with residue was found inside

3       Ms. Baker's jacket and then again the black bag

4       that was found near the bed.

5                    The white powder that I referred to

6       was recovered and taken to the lab and

7       determined to be DOET which resulted in the

8       charge of Mr. Smith for possessing that

9       substance.  Like DOM, the substance found in

10      Erik Brandler, DOET is a synthetic amphetamine

11      which is generally in the 2C-B family of

12      synthetic amphetamines.

13                   While our investigation revealed

14      that 2C-B or Nexus is the generic name of the

15      drug that's ingested, but the actual chemical

16      makeup could be DOM, DOET, or 2C-B.

17                   An initial report done on Erik at

18      the Harrisburg Hospital indicated solely the

19      presence of a synthetic amphetamine.  A later

20      toxicology screen confirmed and identified the

21      substance as DOM or 4-methyl-2,5

22      dimethoxyamphetamine.

23                   Dr. J. Ward Donovan was Erik's

24      treating physician at Harrisburg Hospital.  He

25      studied Erik's symptoms and he found and

36

- - - - -

1          - - - - -

2     determined that Erik suffered a overdose and

3     that it was a serious bodily injury that if

4     left untreated could have resulted in permanent

5     injury or death.  Erik's symptoms as observed

6     by Dr. Donovan included hallucinations,

7     incoherency, sweating, and an increased heart

8     rate.

9               Dr. Donovan subsequently opined to a

10    reasonable degree of medical certainty that

11    Erik's overdose was a bodily injury that

12    involved a substantial risk of death and a

13    protracted loss or impairment of a mental

14    faculty.

15              The Government then consulted Dr.

16    Lawson Bernstein who is a forensic toxicologist

17    with a specialty in substance abuse.  Dr.

18    Bernstein reviewed all the records and agreed

19    with Dr. Donovan's initial diagnosis of a drug

20    overdose and, in fact, also agreed that that

21    overdose constituted seriously bodily injury.

22    And, in particular, if that overdose was left

23    untreated, it could have led to permanent organ

24    damage or loss of life.

25              I earlier indicated that Justin

37

1                    - - - - -

2       Smith had been given his Miranda Warnings and

3       gave a statement.  The summary of that

4       statement given to Officer Christopher Kauffman

5       is as follows:  Justin Smith indicated that he

6       gave the 2C-B to Brandler the night Brandler

7       overdosed.  He purchased the drug from an

8       unknown male at a party and then provided it to

9       several people.  Smith went on to tell the

10      police that the usual method of ingesting 2C-B

11      was by placing it into a small amount of tissue

12      and swallowing it.  He said he was present when

13      Brandler ingested the 2C-B by snorting it.  He

14      indicated that Brandler became incoherent and

15      began to hallucinate.  Brandler's condition got

16      worse but no one took him to the hospital

17      because they didn't want to, quote unquote,

18      "deal with all that."  After a while Brandler

19      appeared to be better but then he got much

20      worse.  It was at this time Smith indicated

21      that he and the others took Brandler home and

22      left him in his front yard.

23              The government would lastly state

24      that at the time Justin Smith distributed these

25      drugs to Erik Brandler, Justin Smith was 18

38

1                        - - - - -

2       years old and Erik Brandler was under the age

3       of 21 and 16 years old.

4                    That would be a summary, Your Honor,

5       of the Government's evidence.

6                        THE COURT:  Is that a fair

7       statement of what happened as far as your

8       participation goes?

9                        THE WITNESS:  Yes, sir.

10                       THE COURT:  Reviewing all the

11      things that we have discussed here today,

12      Mr. Smith, is it still your wish to enter a

13      plea of guilty and waive your right to a trial

14      by jury?

15                       THE WITNESS:  Yes, sir.

16                       THE COURT:  Mr. Livingston,

17      from the facts that he has told you and based

18      on your earlier statements I guess I know the

19      answer, but from the facts that he has told

20      you, do you concur with his plea of guilty?

21                       MR. LIVINGSTON:  Yes, Your

22      Honor, based on the earlier statement.

23                       THE COURT:  Do you know of any

24      reason that he should not plead guilty?

25                       MR. LIVINGSTON:  No, Your

39

1                    - - - - -

2    Honor.

3                    THE COURT:  Do you have any

4    question to ask me, Mr. Smith?

5                    THE WITNESS:  No, sir.

6                    THE COURT:  Well, since you do

7    acknowledge that you are, in fact, guilty as

8    charged in Counts 1 through 4 of the Indictment

9    and based on our discussion today, I find that

10   you know your right to a trial, what the

11   maximum possible punishment is, and that you

12   are voluntarily pleading guilty, I will accept

13   your Guilty Plea and enter a judgment of guilty

14   on your plea.

15                   We note that Mr. Smith has signed

16   the Change of Plea Endorsement indicating he is

17   now pleading guilty to the charges contained in

18   the Indictment and that's been countersigned by

19   Mr. Livingston.

20                   I'm going to order a presentence

21   report here, Mr. Smith, and I'm told by my

22   clerk that the probation department in Scranton

23   is the one that's going to be doing the

24   probation investigation.

25                   Do you understand that,

40

1                    - - - - -

2       Mr. Livingston?

3                    MR. LIVINGSTON:  Yes, Your

4       Honor.  One of the things we learned in this

5       case is even pretrial supervision is conducted

6       through Scranton and not Harrisburg, so that

7       makes sense.

8                    THE COURT:  Well, it's very

9       important that you answer the questions the

10      probation officer asks you to prepare that

11      report because naturally that report is going

12      to be important as to what the ultimate

13      sentence is going to be.

14                   Now, I've been given a sentencing

15      date of Wednesday, November 10, 2010 at 11:00.

16      Now, is it your understanding that's going to

17      be here, Mr. Livingston?  The sentence will be

18      in Pittsburgh?

19                   MR. LIVINGSTON:  I believe so.

20                   MS. MOORE TAYLOR:  Yes, Your

21      Honor.  That is our understanding.

22                   THE COURT:  Okay.  All right.

23      So November 10th, 11:00 here in Pittsburgh.

24                   And I take it the Government has no

25      objection to Mr. Smith being released on bond

41

- - - - -

1        pending sentencing?

2                MS. MOORE TAYLOR:  That's

3        correct, Your Honor, we have no objection.

4                THE COURT:  I think maybe that

5        Plea -- should that Plea Agreement be under

6        seal?

7                MS. MOORE TAYLOR:  Yes.

8                MR. LIVINGSTON:  Yes, Your

9        Honor.

10               THE COURT:  We'll direct that

11       the Plea Agreement be placed under seal and I

12       think perhaps Ms. Moore's recitation of what's

13       in the Agreement ought to be under seal, too.

14               MS. MOORE TAYLOR:  I agree,

15       Your Honor.

16               MR. LIVINGSTON:  Judge, the

17       paper attached to the Plea Agreement is more

18       consistent with your advice of rights about the

19       jury trial, so because it's a Western District

20       of Pennsylvania document, I'm going to --

21       because there's no language in here different

22       than your colloquy, I'm going to have Mr. Smith

23       sign that paper, but I don't know that that

24       needs to be made part of the record because

42

1                        - - - - -

2       it's the colloquy for the waiver of jury trial.

3       Either way we can do it.

4                        MS. MOORE TAYLOR:  Let's leave

5       it.

6                        THE COURT:  Anything further,

7       Mr. Livingston?

8                        MR. LIVINGSTON:  No, Your

9       Honor.

10                       THE COURT:  Ms. Moore?

11                       MS. MOORE TAYLOR:  No, Your

12      Honor.

13                       THE COURT:  Well, then you're

14      free to go.  And you're out under the same

15      conditions as you've been up until now on your

16      bond pending sentencing on November 10th.

17                       Court is in recess until November 10th.

18                        - - - - -

19                       (Proceedings concluded at

20      1:41 p.m.)

21

22

23

24

25

43

1

2                C E R T I F I C A T E

3          I hereby certify that the

4

5       proceedings and evidence are contained

6

7       fully and accurately in the

8       stenographic notes taken by me on the

9

10      hearing of the within cause and that

11      this is a correct transcript of the

12

13      same.

14

15         S/Lee Ann Reid
           ----------------------------------
16
           ----------------------------------
17

18

19

20

21

22

23

24

25

1

## $

**$1,000** [2] - 18:21, 19:8
**$100** [1] - 18:25
**$400** [2] - 19:2, 19:9

## 0

**08-423** [1] - 1:7

## 1

**1** [9] - 10:14, 14:21, 18:13, 18:20, 29:3, 29:17, 29:19, 30:4, 39:8
**10** [1] - 40:15
**1001** [1] - 2:13
**10th** [4] - 4:11, 40:23, 42:16, 42:17
**11:00** [2] - 40:15, 40:23
**11:30** [1] - 33:11
**1250** [2] - 2:5, 2:8
**1500** [1] - 2:13
**15219** [1] - 1:12
**15222** [1] - 2:14
**16** [6] - 10:15, 11:15, 12:14, 13:8, 31:14, 38:3
**18** [2] - 12:17, 15:22, 37:25
**19** [1] - 34:11
**19106** [2] - 2:6, 2:9
**1988** [1] - 4:4
**1:00** [1] - 1:13
**1:41** [1] - 42:20

## 2

**2** [3] - 11:14, 14:24, 18:16
**2,5** [1] - 13:12
**20** [6] - 17:19, 17:20, 18:5, 19:5, 29:20, 30:16
**2007** [6] - 10:15, 11:15, 12:14, 13:8, 31:14, 34:11
**2010** [2] - 1:13, 40:15
**21** [13] - 1:13, 10:24, 11:22, 12:13, 12:22, 12:23, 12:25, 13:5, 13:17, 15:10, 15:24, 18:11, 38:3
**24** [1] - 5:15
**2C** [11] - 31:17, 32:3, 32:10, 34:5, 34:8, 35:11, 35:14, 35:16, 37:6, 37:10, 37:13

**2C-B** [11] - 31:17, 32:3, 32:10, 34:5, 34:8, 35:11, 35:14, 35:16, 37:6, 37:10, 37:13

## 3

**3** [5] - 12:12, 12:14, 15:9, 18:6, 18:9
**318** [1] - 4:7
**3553(b** [1] - 29:25
**3B1.1** [2] - 24:22, 30:2

## 4

**4** [4] - 13:6, 18:18, 19:8, 39:8
**4-methyl-2,5** [7] - 10:20, 11:20, 12:19, 14:13, 15:4, 16:7, 35:21
**4-meythl-2,5** [1] - 15:17
**40** [1] - 18:13
**400** [1] - 31:15

## 5

**5K** [1] - 29:25

## 6

**6** [2] - 18:14, 19:7
**615** [2] - 2:5, 2:8

## 7

**700** [1] - 1:12

## 8

**841** [3] - 10:24, 11:23, 12:24
**844a** [1] - 13:17
**859(a** [1] - 12:25
**8A** [1] - 1:11

## 9

**9** [1] - 4:3

## A

**a)(1** [3] - 10:25, 11:23, 12:24
**able** [3] - 4:13, 20:5, 30:24
**absolutely** [1] - 26:10

**abuse** [2] - 5:3, 36:17
**accept** [1] - 39:12
**acceptance** [1] - 30:6
**accident** [1] - 17:2
**according** [2] - 28:15
**accurately** [1] - 43:6
**acknowledge** [2] - 9:14, 39:7
**act** [3] - 12:8, 16:22, 16:25
**actual** [1] - 35:15
**addiction** [1] - 4:24
**addition** [1] - 18:22
**address** [1] - 4:6
**admission** [2] - 29:12, 29:15
**admitted** [2] - 34:4, 34:7
**admitting** [1] - 30:18
**advice** [5] - 22:6, 22:11, 29:23, 30:11, 41:19
**advisory** [1] - 19:24
**Affidavit** [3] - 29:10, 29:18, 30:9
**afford** [1] - 7:11
**age** [9] - 12:17, 12:22, 13:5, 15:10, 15:22, 15:24, 18:11, 38:2
**AGENCY** [1] - 1:25
**ago** [2] - 19:17, 19:19
**agree** [3] - 23:6, 31:2, 41:15
**agreed** [3] - 26:14, 36:18, 36:20
**agreeing** [2] - 22:20, 24:21
**agreement** [1] - 26:15
**Agreement** [16] - 21:2, 22:25, 23:4, 23:7, 23:9, 24:13, 24:18, 24:20, 25:9, 25:13, 29:25, 30:14, 41:6, 41:12, 41:14, 41:18
**agreements** [2] - 27:10, 27:19
**alcohol** [1] - 5:3
**alcoholic** [2] - 5:11, 5:15
**AMERICA** [1] - 1:5
**amount** [5] - 10:19, 11:19, 12:19, 13:12, 37:11
**amphetamine** [2] - 35:10, 35:19
**amphetamines** [1] - 35:12
**ample** [1] - 6:13
**Ann** [2] - 1:22, 43:15
**answer** [3] - 3:23, 38:19, 40:9
**answered** [1] - 33:7
**answers** [2] - 3:20, 6:11

**apparent** [1] - 33:21
**appeal** [1] - 21:4
**appeared** [1] - 37:19
**Appellate** [1] - 24:25
**applies** [1] - 20:19
**apply** [1] - 19:14
**area** [1] - 31:19
**arrive** [2] - 19:22, 19:25
**aspect** [3] - 21:20, 22:5, 24:20
**assessment** [2] - 18:25, 19:9
**assume** [1] - 25:4
**attached** [1] - 41:18
**attempted** [2] - 32:16, 32:17
**Attorney** [2] - 9:18, 26:9
**attorney** [6] - 6:14, 7:9, 7:11, 8:5, 20:14, 20:15
**attorney's** [1] - 26:16
**attorneys** [1] - 6:4
**Attorneys** [2] - 2:4, 2:7
**authority** [1] - 20:20
**AUTHORIZATION** [1] - 1:24
**Avenue** [1] - 2:13
**aware** [1] - 16:21

## B

**b)(1)(C)** [3] - 10:25, 11:23, 12:24
**bag** [6] - 34:20, 34:21, 34:23, 34:24, 34:25, 35:3
**bail** [2] - 25:19, 25:21
**Baker** [4] - 31:25, 32:5, 32:9, 34:14
**baker** [1] - 31:25
**baker's** [1] - 35:3
**Bargain** [1] - 26:8
**bargaining** [1] - 26:5
**based** [7] - 6:10, 28:25, 29:22, 33:14, 38:17, 38:22, 39:9
**basis** [9] - 9:5, 22:5, 26:18, 29:11, 29:16, 29:22, 29:24, 30:13, 31:10
**batch** [1] - 32:4
**became** [1] - 37:14
**bed** [1] - 35:4
**BEFORE** [1] - 1:15
**began** [3] - 33:25, 37:15
**behalf** [1] - 8:8
**Bernstein** [2] - 36:16, 36:18
**better** [1] - 37:19

**between** [3] - 23:9, 24:13, 29:2
**beverage** [1] - 5:11
**beverages** [1] - 5:15
**beyond** [1] - 7:18
**binding** [2] - 26:17, 28:14
**birth** [1] - 4:2
**black** [3] - 34:23, 34:25, 35:3
**blue** [1] - 34:22
**bodily** [1] - 10:23, 11:5, 11:10, 14:11, 14:19, 17:17, 29:4, 30:7, 36:3, 36:11, 36:21
**Bologna** [2] - 2:7, 30:22
**bond** [2] - 40:25, 42:16
**Boyer** [1] - 31:15
**Brandler** [24] - 31:14, 31:19, 31:21, 32:2, 32:5, 32:7, 32:9, 32:10, 32:14, 32:15, 33:3, 33:4, 33:8, 33:15, 34:6, 35:10, 37:6, 37:13, 37:14, 37:18, 37:21, 37:25, 38:2
**brandler** [2] - 31:23, 33:10
**Brandler's** [5] - 32:24, 33:6, 33:7, 33:8, 37:15
**Brandlers** [1] - 33:22
**Bruce** [1] - 33:8

## C

**caller** [1] - 33:14
**car** [1] - 33:5
**care** [1] - 4:20
**case** [18] - 6:14, 6:25, 7:10, 9:20, 10:4, 14:5, 14:6, 19:2, 19:14, 20:6, 20:19, 21:12, 28:4, 28:23, 28:24, 29:21, 31:3, 40:5
**cases** [1] - 15:13
**caused** [1] - 27:21
**causing** [2] - 11:10, 14:10
**cell** [1] - 33:6
**cellphone** [1] - 33:24
**Center** [1] - 2:13
**certain** [1] - 14:7
**certainty** [1] - 36:10
**certify** [1] - 43:3
**CERTIFYING** [1] - 1:24
**challenge** [1] - 20:8
**Change** [1] - 39:16

**CHANGE** [1] - 1:17
**charge** [2] - 7:12, 35:8
**charged** [5] - 13:24, 16:16, 16:22, 30:19, 39:8
**charges** [6] - 6:17, 7:5, 10:7, 10:14, 11:15, 39:17
**chemical** [2] - 13:15, 35:15
**Chestnut** [2] - 2:5, 2:8
**choose** [1] - 26:22
**chose** [1] - 8:18
**chosen** [1] - 30:12
**Christopher** [1] - 37:4
**circumstances** [3] - 16:23, 20:20, 21:3
**claim** [1] - 27:18
**clear** [5] - 5:23, 26:10, 34:20, 34:24
**clerk** [1] - 39:22
**client** [2] - 3:6, 4:14
**Code** [6] - 10:24, 11:2, 11:22, 12:23, 13:17, 17:10
**coherently** [1] - 32:18
**COHILL** [2] - 1:15, 3:5
**colloquy** [3] - 25:5, 41:23, 42:2
**comment** [1] - 28:22
**communicate** [1] - 4:13
**compel** [2] - 8:13, 29:6
**competency** [1] - 6:5
**competent** [2] - 6:12, 7:17
**completed** [1] - 20:7
**completely** [1] - 28:16
**composition** [1] - 13:15
**compulsory** [1] - 8:12
**concerning** [1] - 21:17
**concluded** [1] - 42:19
**concur** [1] - 38:20
**condition** [4] - 32:16, 32:24, 33:17, 37:15
**conditions** [2] - 21:6, 42:15
**conducted** [1] - 40:5
**confession** [2] - 21:16, 22:14
**confirmed** [1] - 35:20
**connection** [1] - 6:17
**conscious** [2] - 16:21, 28:15
**consequently** [1] - 32:21
**consider** [2] - 17:9, 17:12
**consideration** [1] - 30:13
**considering** [1] - 9:6
**consistent** [5] - 22:10,

24:16, 25:8, 29:12, 41:19
**constituted** [1] - 36:21
**constitutional** [2] - 6:24, 7:3
**consulted** [1] - 36:15
**contained** [3] - 7:5, 39:17, 43:5
**containing** [5] - 10:19, 11:19, 12:18, 13:11, 34:24
**contents** [1] - 24:17
**context** [1] - 21:21
**controlled** [24] - 10:22, 11:4, 11:21, 12:2, 12:21, 13:3, 13:14, 13:20, 14:13, 14:17, 14:18, 14:20, 15:3, 15:6, 15:7, 15:16, 15:20, 16:6, 16:9, 16:10, 17:16, 18:3, 18:10, 18:19
**convinced** [1] - 25:13
**copy** [1] - 10:3
**correct** [3] - 3:8, 41:4, 43:11
**COUNSEL** [1] - 2:2
**Counsel** [1] - 23:10
**Count** [9] - 11:14, 12:12, 12:14, 13:6, 14:21, 14:24, 15:9, 18:9, 18:18, 29:3, 29:17, 29:19, 30:4
**count** [2] - 10:14, 11:9, 14:7, 16:4, 17:16, 18:2, 18:25
**countersigned** [1] - 39:18
**counts** [5] - 10:13, 14:9, 19:2, 29:21, 30:19
**Counts** [1] - 39:8
**course** [2] - 9:19, 15:12
**court** [1] - 42:17
**COURT** [85] - 1:2, 3:11, 3:14, 3:18, 3:25, 4:5, 4:9, 4:12, 4:18, 4:22, 5:2, 5:5, 5:9, 5:13, 5:17, 5:20, 5:23, 6:3, 6:10, 6:16, 6:19, 6:22, 7:8, 7:14, 7:21, 8:2, 8:10, 8:16, 8:23, 9:8, 9:16, 9:22, 10:2, 10:6, 10:10, 11:8, 12:12, 13:23, 14:3, 14:24, 16:3, 16:15, 16:18, 17:6, 19:12, 19:16, 20:12, 20:17, 20:24, 21:9, 21:14, 21:25, 22:13, 22:24, 24:15, 25:6, 25:11, 25:23, 26:3, 26:12, 26:21, 27:4, 27:8, 27:16, 28:2,

28:6, 28:10, 28:19, 30:17, 30:21, 31:6, 31:12, 38:6, 38:10, 38:16, 38:23, 39:3, 39:6, 40:8, 40:22, 41:5, 41:11, 42:6, 42:10, 42:13
**Court** [14] - 1:22, 3:4, 8:4, 8:14, 17:12, 19:17, 19:18, 21:5, 25:4, 27:9, 27:23, 29:12, 31:11, 34:4
**Courthouse** [1] - 1:11
**Courtroom** [1] - 1:11
**Courts** [1] - 19:19
**crime** [3] - 11:2, 11:24, 13:18
**criminal** [1] - 14:6
**cross** [1] - 8:6
**cross-examine** [1] - 8:6
**curious** [1] - 30:2

## D

**damage** [1] - 36:24
**data** [1] - 6:4
**date** [3] - 3:25, 27:17, 40:15
**Dawn** [2] - 31:24, 34:14
**deal** [2] - 33:4, 37:18
**death** [2] - 36:5, 36:12
**decide** [1] - 28:20
**decision** [1] - 33:2
**Defendant** [7] - 1:9, 2:10, 3:13, 10:17, 11:17, 12:16, 13:9
**Defenders** [1] - 2:12
**define** [1] - 16:19
**definition** [1] - 30:7
**degree** [1] - 36:10
**deliberately** [1] - 17:2
**department** [1] - 39:22
**described** [2] - 9:2, 33:17
**desire** [1] - 3:7
**desk** [2] - 34:22, 34:23
**detectable** [4] - 10:19, 11:19, 12:19, 13:11
**deteriorating** [1] - 32:15
**determine** [2] - 20:5, 22:18
**determined** [2] - 20:18, 35:7, 36:2
**diagnosis** [1] - 36:19
**different** [6] - 13:15, 20:13, 22:3, 31:20, 32:12, 41:22
**dimethoxyampheta mine** [9] - 10:20, 11:20, 12:20, 13:12, 14:14, 15:4, 15:17,

16:7, 35:22
**direct** [1] - 41:11
**directed** [1] - 34:16
**direction** [2] - 32:22, 34:18
**disagree** [1] - 20:10
**discovery** [3] - 21:20, 22:3, 29:6
**discuss** [1] - 6:14
**discussed** [5] - 9:22, 10:6, 22:7, 25:17, 38:11
**discussion** [2] - 29:13, 39:9
**discussions** [1] - 28:25
**dispose** [1] - 28:4
**distribute** [2] - 11:3, 11:25
**distributed** [7] - 10:18, 11:18, 12:18, 14:15, 15:6, 15:19, 37:24
**distributing** [1] - 13:3
**distribution** [10] - 11:9, 11:13, 12:13, 14:10, 14:25, 15:10, 15:23, 17:16, 18:3, 18:10
**DISTRICT** [2] - 1:2, 1:2
**district** [1] - 25:4
**District** [9] - 2:5, 2:8, 2:12, 10:16, 11:16, 12:15, 13:9, 19:19, 41:20
**doctor** [2] - 29:8, 30:10
**Doctor** [1] - 29:18
**document** [2] - 21:22, 41:21
**doubt** [1] - 7:18
**Dr** [6] - 35:23, 36:6, 36:9, 36:15, 36:17, 36:19
**drawn** [1] - 8:20
**drink** [1] - 32:20
**Drive** [1] - 4:8
**dropped** [1] - 31:19
**drove** [1] - 31:14

**drug** [8] - 5:10, 13:15, 33:21, 33:23, 34:17, 35:15, 36:19, 37:7
**drugs** [4] - 5:14, 32:6, 34:17, 37:25
**during** [2] - 9:18, 32:11

## E

**easier** [1] - 30:8
**Eastern** [2] - 2:5, 2:8
**either** [3] - 6:3, 20:14, 42:3
**electing** [1] - 22:11
**elements** [4] - 14:7, 14:8, 28:23, 29:3
**emergency** [1] - 30:10
**encountered** [2] - 33:16, 33:23
**end** [1] - 33:13
**Endorsement** [1] - 39:16
**engaged** [1] - 16:22
**enhanced** [1] - 13:2
**Enola** [2] - 4:7, 4:8
**enter** [8] - 3:7, 8:23, 9:4, 9:8, 9:24, 27:21, 38:12, 39:13
**entitled** [4] - 7:4, 8:11, 24:23, 26:25
**Eppley** [1] - 32:25
**Erik** [12] - 31:14, 31:16, 33:2, 33:8, 33:16, 34:4, 34:6, 35:10, 35:17, 36:2, 37:25, 38:2
**erik's** [1] - 36:5
**Erik's** [5] - 33:17, 33:24, 35:23, 35:25, 36:11
**Esq** [3] - 2:4, 2:7, 2:11
**essential** [2] - 24:13, 29:3
**establish** [2] - 14:25, 15:11
**events** [3] - 9:17, 29:11, 31:2
**evidence** [7] - 7:17, 8:7, 8:8, 29:14, 31:9, 38:5, 43:5
**exactly** [1] - 5:24
**examine** [1] - 8:6
**excuse** [1] - 5:19
**executed** [2] - 34:12, 34:13
**expect** [1] - 30:24
**expert** [1] - 29:6

## F

**face** [2] - 17:20, 17:21
**fact** [7] - 8:21, 27:14,

2

29:24, 32:9, 34:8, 36:20, 39:7
**facts** [5] - 6:17, 16:23, 20:8, 38:17, 38:19
**factual** [8] - 22:5, 28:23, 29:11, 29:16, 29:22, 29:24, 30:13, 31:10
**faculty** [1] - 36:14
**fair** [2] - 20:2, 38:6
**fairly** [1] - 31:10
**FAITHE** [1] - 6:8
**Faithe** [1] - 2:4
**false** [1] - 3:22
**familiar** [1] - 25:3
**family** [1] - 35:11
**far** [5] - 4:9, 29:14, 29:19, 30:15, 38:7
**father** [1] - 33:8
**Federal** [1] - 2:12
**few** [3] - 19:17, 19:18, 21:2
**figure** [2] - 19:21, 19:24
**file** [1] - 22:11
**filed** [3] - 10:3, 29:5, 31:10
**filing** [1] - 22:8
**fine** [5] - 5:22, 17:24, 18:7, 18:16, 18:21
**fines** [1] - 19:8
**first** [4] - 7:2, 17:9, 17:14, 17:15
**five** [1] - 32:11
**focus** [2] - 32:16, 32:17
**follow** [3] - 19:20, 30:12, 32:22
**following** [5] - 25:19, 28:16, 31:9, 31:23, 34:19
**follows** [2] - 23:11, 37:5
**FOR** [1] - 1:2
**forced** [1] - 21:10
**foregoing** [1] - 6:11
**forensic** [1] - 36:16
**four** [3] - 10:12, 19:2, 30:19
**fourth** [1] - 15:21
**free** [1] - 42:14
**freely** [1] - 22:15
**FROM** [1] - 1:24
**front** [3] - 32:7, 33:5, 37:22
**fully** [1] - 43:6

**G**

**generally** [1] - 35:11
**generated** [1] - 29:7
**generic** [1] - 35:14
**girlfriend** [1] - 31:24

**given** [5] - 3:20, 34:15, 37:2, 37:4, 40:14
**Government** [24] - 2:3, 7:16, 8:4, 8:7, 8:8, 14:4, 14:6, 20:7, 21:4, 21:17, 23:3, 23:10, 24:14, 24:21, 25:18, 25:20, 26:15, 26:23, 29:2, 30:8, 30:23, 31:8, 36:15, 40:24
**government** [1] - 37:23
**Government's** [1] - 38:5
**grade** [1] - 4:11
**grand** [1] - 29:8
**Grant** [1] - 1:12
**great** [1] - 30:15
**green** [1] - 34:24
**groggy** [1] - 32:8
**guard** [1] - 26:6
**guess** [1] - 38:18
**Guideline** [6] - 19:22, 19:25, 20:5, 20:18, 30:5, 30:7
**Guidelines** [5] - 17:13, 19:14, 19:21, 20:22, 24:22
**guilt** [2] - 8:20, 9:14
**guilty** [22] - 3:8, 7:17, 8:24, 9:4, 9:5, 9:9, 9:13, 9:24, 10:8, 21:12, 25:14, 27:2, 28:20, 30:16, 30:18, 38:13, 38:20, 38:24, 39:7, 39:12, 39:13, 39:17
**Guilty** [2] - 26:18, 39:13

**H**

**hallucinate** [1] - 37:15
**hallucinating** [1] - 32:8
**hallucinations** [1] - 36:6
**Harrisburg** [4] - 33:20, 35:18, 35:24, 40:6
**hear** [5] - 22:4, 29:9, 29:10, 29:23, 30:10
**hearing** [5] - 22:17, 22:22, 25:7, 25:20, 43:9
**heart** [1] - 36:7
**help** [1] - 33:10
**hereby** [1] - 43:3
**higher** [1] - 30:5
**Holy** [1] - 33:18
**home** [12] - 31:15, 31:18, 31:22, 31:23, 32:13, 33:3, 33:7, 34:5, 34:12, 34:14,

34:17, 37:21
**Honor** [18] - 3:10, 6:7, 6:9, 21:20, 23:9, 24:12, 26:2, 31:5, 38:4, 38:22, 39:2, 40:4, 40:21, 41:4, 41:10, 41:16, 42:9, 42:12
**HONORABLE** [1] - 1:15
**hopefully** [1] - 20:2
**Hospital** [4] - 33:19, 33:20, 35:18, 35:24
**hospital** [2] - 34:7, 37:16
**hospitalized** [3] - 4:23, 5:3, 5:6
**hours** [3] - 5:15, 32:12, 32:23

**I**

**idea** [1] - 10:11
**identified** [1] - 35:20
**identify** [1] - 33:13
**illness** [1] - 5:7
**immediately** [1] - 33:18
**impairment** [1] - 36:13
**important** [4] - 26:4, 28:11, 40:9, 40:12
**impose** [6] - 18:24, 20:20, 21:5, 26:22, 26:24, 28:8
**imprisonment** [7] - 17:18, 17:22, 18:5, 18:12, 18:14, 18:20, 19:5
**IN** [1] - 1:2
**inadvertently** [1] - 17:3
**included** [3] - 22:6, 29:24, 36:6
**including** [3] - 29:15, 31:21, 32:19
**incoherency** [1] - 36:7
**incoherent** [2] - 33:17, 37:14
**increased** [1] - 36:7
**incriminate** [1] - 9:11
**indicate** [1] - 21:11
**indicated** [6] - 3:7, 35:18, 36:25, 37:5, 37:14, 37:20
**indicating** [1] - 39:16
**Indictment** [7] - 7:6, 10:3, 10:8, 11:4, 11:14, 39:8, 39:18
**individuals** [4] - 32:12, 32:14, 32:25, 33:25
**inference** [1] - 8:20
**influence** [1] - 5:10
**information** [2] - 34:3,

34:10
**ingest** [1] - 32:6
**ingested** [2] - 35:15, 37:13
**ingesting** [1] - 37:10
**initial** [2] - 35:17, 36:19
**injury** [12] - 10:23, 11:5, 11:10, 14:11, 14:19, 17:17, 29:4, 30:7, 36:3, 36:5, 36:11, 36:21
**innocent** [3] - 7:16, 7:22, 7:24
**inside** [4] - 34:14, 34:23, 34:25, 35:2
**instance** [1] - 27:12
**intend** [1] - 10:8
**intended** [1] - 12:7
**intentionally** [17] - 10:18, 11:3, 11:18, 11:25, 12:4, 12:7, 12:17, 13:3, 13:10, 13:19, 14:12, 15:2, 15:16, 16:5, 16:19, 16:24, 16:25
**interacted** [1] - 32:14
**interviewed** [1] - 31:25
**interviews** [1] - 31:20
**investigation** [2] - 35:13, 39:24
**involved** [1] - 36:12
**IS** [1] - 1:24
**items** [1] - 34:19

**J**

**jacket** [1] - 35:3
**Jason** [1] - 2:7
**job** [1] - 6:20
**John** [2] - 31:14, 34:2
**Jones** [4] - 31:14, 31:18, 34:2, 34:4
**Joseph** [1] - 33:2
**JR** [2] - 1:15, 3:5
**Judge** [7] - 4:17, 7:19, 15:14, 20:19, 25:16, 28:21, 41:17
**JUDGE** [1] - 3:5
**judgment** [2] - 9:4, 39:13
**July** [1] - 1:13
**jury** [7] - 7:5, 7:19, 15:14, 29:8, 38:14, 41:20, 42:2
**Justin** [19] - 10:17, 11:17, 12:16, 13:9, 29:13, 29:23, 30:3, 31:15, 31:18, 31:24, 32:8, 32:24, 34:5, 34:9, 34:12, 34:13, 36:25, 37:24, 37:25
**justin** [4] - 1:8, 3:16,

34:15, 37:5
**JUSTIN** [1] - 3:16

**K**

**Kauffman** [1] - 37:4
**keyboard** [1] - 34:21
**kind** [1] - 9:3
**kinds** [1] - 17:8
**knowingly** [16] - 10:17, 11:3, 11:17, 11:25, 12:4, 12:5, 12:17, 13:2, 13:10, 13:19, 14:12, 15:2, 15:15, 16:5, 16:19, 16:20
**known** [13] - 10:21, 11:20, 12:20, 13:12, 13:16, 14:14, 14:15, 15:4, 15:5, 15:18, 16:7, 16:8

**L**

**lab** [1] - 35:6
**language** [5] - 24:24, 25:3, 30:2, 41:22
**last** [2] - 14:18, 16:3
**lastly** [1] - 37:23
**law** [4] - 12:3, 14:18, 26:19, 28:16
**lawn** [2] - 33:6, 33:9
**laws** [1] - 7:3
**Lawson** [1] - 36:16
**lawyer** [2] - 26:14, 26:24
**leafy** [1] - 34:24
**learned** [1] - 40:4
**least** [1] - 15:22
**leave** [1] - 42:4
**led** [1] - 36:23
**Lee** [1] - 1:22
**left** [5] - 31:19, 33:5, 36:4, 36:22, 37:22
**leniency** [3] - 27:13, 28:7, 28:12
**less** [3] - 17:19, 19:23, 20:21
**level** [2] - 24:23, 24:24
**Liberty** [2] - 2:13, 2:13
**life** [4] - 17:19, 17:21, 19:4, 36:24
**lifetime** [4] - 17:24, 18:7, 18:15, 19:6
**listed** [1] - 33:25
**Livingston** [8] - 2:11, 19:13, 22:16, 23:5, 25:8, 30:25, 38:16, 39:19
**livingston** [9] - 3:6, 4:12, 10:7, 21:15, 22:20, 24:16, 40:2, 40:17, 42:7

3

LIVINGSTON [15] - 3:9, 4:16, 6:6, 21:19, 22:2, 24:19, 25:16, 28:21, 38:21, 38:25, 40:3, 40:19, 41:9, 41:17, 42:8
located [1] - 34:21
location [1] - 34:16
look [1] - 19:23
looking [2] - 19:3, 28:23
loss [2] - 36:13, 36:24

**M**

major [1] - 24:17
makeup [1] - 35:16
male [1] - 37:8
mandatory [7] - 17:22, 18:5, 18:12, 18:14, 19:5, 19:7, 30:16
matter [2] - 21:18, 31:8
MAURICE [2] - 1:15, 3:5
maximum [8] - 17:19, 17:21, 18:4, 18:13, 18:20, 19:4, 26:19, 39:11
mean [1] - 12:5
means [3] - 7:22, 16:20, 16:25
medical [1] - 36:10
medicine [2] - 5:10, 5:14
mental [2] - 5:6, 36:13
mentally [2] - 5:18, 5:21
mentioned [1] - 18:23
met [1] - 31:23
method [1] - 37:10
MIDDLE [1] - 1:2
Middle [4] - 10:16, 11:16, 12:15, 13:8
might [8] - 19:14, 20:9, 20:13, 21:5, 26:13, 26:17, 26:23, 28:8
million [4] - 17:25, 18:8, 18:16, 19:8
mind [1] - 26:10
minimum [9] - 17:20, 17:23, 18:5, 18:12, 18:14, 19:5, 19:7, 29:20, 30:16
minute [1] - 29:9
minutes [1] - 1:8
Miranda [4] - 21:24, 22:7, 34:15, 37:2
Mishalko [1] - 33:2
mistake [2] - 12:6, 17:2
misunderstanding [1] - 26:7

mixture [4] - 10:18, 11:18, 12:18, 13:11
MOORE [12] - 6:8, 23:8, 25:25, 31:4, 31:7, 31:13, 40:20, 41:3, 41:8, 41:15, 42:4, 42:11
Moore [4] - 2:4, 25:7, 30:22, 42:10
moore's [1] - 41:13
Moore's [1] - 23:6
mother [2] - 33:24, 34:8
motion [3] - 22:10, 22:12, 29:6
motions [2] - 22:8, 22:9
motivated [1] - 27:20
MR [16] - 3:9, 3:16, 4:16, 6:6, 21:19, 22:2, 24:19, 25:16, 28:21, 38:21, 38:25, 40:3, 40:19, 41:9, 41:17, 42:8
MS [12] - 6:8, 23:8, 25:25, 31:4, 31:7, 31:13, 40:20, 41:3, 41:8, 41:15, 42:4, 42:11
multicolor [1] - 35:2

**N**

name [3] - 3:15, 11:9, 35:14
namely [4] - 14:13, 15:3, 15:17, 16:6
narcotic [2] - 4:23, 5:10
naturally [1] - 40:11
near [1] - 35:4
need [1] - 22:21
needed [1] - 33:10
needs [1] - 41:25
negotiations [1] - 9:19
never [2] - 32:5
next [1] - 32:11
Nexus [13] - 10:21, 11:4, 11:21, 12:2, 12:20, 13:4, 13:13, 13:20, 14:14, 15:5, 15:18, 16:8, 35:14
night [3] - 31:22, 33:12, 37:6
note [3] - 13:14, 25:5, 39:15
notes [1] - 43:8
notice [1] - 28:12
November [5] - 4:3, 40:15, 40:23, 42:16, 42:17

**O**

oath [1] - 3:21
object [1] - 8:7
objection [2] - 40:25, 41:4
observed [2] - 32:15, 36:5
observing [1] - 32:24
OF [5] - 1:2, 1:4, 1:17, 1:19, 1:24
offense [3] - 14:8, 16:24, 24:24
offer [1] - 8:8
offered [1] - 8:7
Office [3] - 2:4, 2:7, 2:12
officer [2] - 20:9, 40:10
Officer [1] - 37:4
officers [1] - 34:16
old [2] - 38:2, 38:3
omission [1] - 22:14
omissions [1] - 21:16
one [17] - 7:12, 11:11, 11:12, 17:25, 18:8, 21:20, 21:22, 22:4, 22:8, 24:19, 25:17, 28:3, 29:2, 29:20, 37:16, 39:23, 40:4
ongoing [2] - 28:25, 29:13
open [1] - 27:23
opined [1] - 36:9
opinion [1] - 29:17
opportunity [4] - 6:13, 20:8, 22:17, 27:22
oppose [1] - 26:16
order [5] - 9:12, 19:22, 19:25, 25:22, 39:20
Order [1] - 3:4
organ [1] - 36:23
ought [1] - 41:14
out-of-Court [1] - 27:9
outside [1] - 33:15
overdose [6] - 33:21, 36:2, 36:11, 36:20, 36:21, 36:22
overdosed [1] - 37:7
own [1] - 28:15

**P**

p.m [2] - 1:13, 42:20
PA [4] - 1:12, 2:6, 2:9, 2:14
paper [2] - 41:18, 41:24
paraphernalia [1] - 34:17
parents [1] - 33:3
parents' [1] - 33:5
part [1] - 41:25

participation [1] - 38:8
particular [3] - 11:24, 13:18, 36:22
partied [1] - 32:13
party [1] - 37:8
passed [1] - 32:23
past [1] - 5:15
penalties [4] - 3:22, 13:2, 17:7, 17:8, 17:11, 18:23
pending [2] - 41:2, 42:16
PENNSYLVANIA [1] - 1:2
Pennsylvania [10] - 2:5, 2:8, 2:12, 4:8, 10:17, 11:17, 12:16, 13:9, 31:16, 41:21
people [1] - 37:9
perhaps [1] - 41:13
perjury [1] - 3:22
permanent [2] - 36:4, 36:23
permitted [1] - 26:19
person [8] - 10:23, 12:13, 12:22, 13:4, 15:10, 18:11, 27:20, 33:12
Philadelphia [2] - 2:6, 2:9
phone [3] - 33:6, 33:7, 33:13
physically [2] - 5:18, 5:21
physician [2] - 4:20, 35:24
pieces [1] - 22:3
pill [1] - 5:11
pills [1] - 5:14
pipe [2] - 34:22, 35:2
Pittsburgh [4] - 1:12, 2:14, 40:18, 40:23
place [1] - 26:5
placed [1] - 41:12
placing [1] - 37:11
Plaintiff [1] - 1:6
plastic [1] - 34:20
plea [11] - 3:7, 8:24, 9:5, 9:9, 9:19, 9:24, 21:7, 27:2, 38:13, 38:20, 39:14
Plea [16] - 20:25, 22:25, 23:4, 25:9, 25:13, 26:7, 26:18, 27:21, 29:25, 30:13, 39:13, 39:16, 41:6, 41:12, 41:18
PLEA [1] - 1:17
plead [6] - 6:12, 10:8, 21:11, 25:14, 28:20, 38:24
pleading [2] - 39:12, 39:17

police [3] - 21:16, 34:11, 37:10
possess [2] - 13:19, 16:10
possessed [5] - 13:10, 14:12, 15:3, 15:16, 16:6
possessing [1] - 35:8
possession [2] - 13:7, 16:4, 18:18
possible [3] - 17:7, 26:6, 39:11
postponements [1] - 28:24
potent [1] - 32:4
potential [2] - 22:9
powder [2] - 34:19, 35:5
preceding [1] - 22:6
predicted [3] - 20:15, 28:7, 28:11
prediction [1] - 27:5
prepare [1] - 40:10
prepared [1] - 29:10
prescription [2] - 16:11, 16:12
presence [2] - 8:5, 35:19
PRESENT [1] - 2:2
present [2] - 31:9, 37:12
presentence [3] - 9:6, 20:6, 39:20
presumed [2] - 7:15, 7:22
pretrial [2] - 22:8, 40:5
probation [4] - 20:9, 39:22, 39:24, 40:10
proceed [1] - 31:5
proceeded [1] - 33:15
Proceedings [1] - 42:19
proceedings [2] - 7:10, 43:5
PROCEEDINGS [1] - 1:19
process [1] - 8:12
production [1] - 29:7
progressed [1] - 29:5
PROHIBITED [1] - 1:24
promise [4] - 25:12, 27:5, 27:13, 27:14
promised [2] - 28:7, 28:12
promises [3] - 27:9, 27:18, 28:3
prosecution [1] - 26:15
prospect [1] - 22:8
protracted [1] - 36:13
prove [14] - 7:17, 7:23, 14:5, 14:7, 14:11, 14:21, 15:2, 15:12,

4

5

15:13, 15:15, 15:22,
16:5, 30:8, 30:24
**provided** [2] - 7:12,
37:8
**provides** [1] - 12:25
**psychiatrist** [1] - 4:20
**public** [1] - 7:5
**Public** [2] - 2:12
**punishment** [1] -
39:11
**purchase** [2] - 31:17,
34:5
**purchased** [1] - 37:7
**purpose** [2] - 12:9,
31:16
**pursuant** [2] - 16:11,
25:21
**putting** [1] - 28:12

**Q**

**questions** [6] - 3:20,
6:11, 9:12, 16:19,
27:11, 40:9
**quote** [2] - 30:3, 37:17
**quoting** [1] - 10:15

**R**

**range** [1] - 30:5
**rate** [1] - 36:8
**reached** [1] - 31:18
**read** [2] - 10:12, 31:12
**reason** [1] - 38:24
**reasonable** [2] - 7:18,
36:10
**recalled** [2] - 31:25,
33:10
**receive** [1] - 26:18
**received** [4] - 10:2,
21:23, 33:11, 33:20
**recently** [1] - 4:19
**recess** [1] - 42:17
**recitation** [1] - 41:13
**recommendation** [1] -
26:13
**recommended** [1] -
26:23
**recommending** [1] -
25:20
**record** [4] - 3:15, 9:14,
10:11, 41:25
**recorded** [1] - 20:8
**records** [1] - 36:18
**recovered** [1] - 35:6
**recovery** [1] - 34:18
**REDACTED** [1] - 1:18
**reduction** [1] - 24:24
**referred** [1] - 35:5
**refers** [1] - 22:3
**regarding** [2] - 9:17,
29:6
**Reid** [2] - 1:22, 43:15

**related** [1] - 34:3
**relates** [1] - 25:19
**relayed** [1] - 34:10
**release** [8] - 17:23,
17:24, 18:6, 18:7,
18:15, 18:16, 19:6,
19:8
**released** [2] - 25:21,
40:25
**relevant** [1] - 26:5
**remain** [1] - 25:21
**report** [6] - 9:6, 20:6,
35:17, 39:21, 40:11
**Reported** [1] - 1:21
**Reporter** [1] - 1:22
**representation** [3] -
25:12, 26:8, 28:13
**representations** [2] -
27:9, 27:19
**representatives** [1] -
21:17
**REPRODUCTION** [1] -
1:24
**requested** [1] - 26:16
**require** [2] - 27:10,
30:9
**required** [3] - 7:16,
18:24, 19:20
**residue** [2] - 34:22,
35:2
**respect** [1] - 28:7
**respects** [1] - 25:2
**respond** [2] - 27:11,
32:18
**responsibility** [1] -
30:6
**resulted** [5] - 10:22,
14:19, 34:18, 35:7,
36:4
**results** [2] - 11:5,
17:17
**retrieves** [1] - 33:24
**returned** [1] - 32:6
**revealed** [2] - 31:22,
35:13
**reviewed** [3] - 23:2,
24:25, 36:18
**reviewing** [3] - 21:22,
28:22, 38:10
**ride** [1] - 29:21
**rights** [6] - 6:23, 6:24,
9:2, 9:23, 22:6,
41:19
**Rights** [1] - 34:15
**risk** [3] - 30:14, 30:15,
36:12
**room** [2] - 30:10, 32:6
**ruling** [1] - 19:19
**rushed** [1] - 33:18

**S**

**s/Lee** [1] - 43:15

**sandwich** [1] - 34:24
**satisfaction** [2] - 7:18,
15:14
**satisfied** [1] - 6:19
**satisfy** [1] - 9:13
**saw** [2] - 29:17, 32:5
**Schedule** [4] - 10:22,
11:21, 12:21, 13:13
**school** [1] - 4:10
**Scranton** [2] - 39:22,
40:6
**screen** [1] - 35:20
**seal** [3] - 41:7, 41:12,
41:14
**search** [2] - 34:11,
34:13
**second** [2] - 11:11,
18:2
**secondly** [1] - 17:12
**Section** [5] - 10:24,
11:23, 12:24, 12:25,
13:17
**section** [3] - 11:2,
11:24, 13:18
**sense** [2] - 4:14, 40:7
**Sentence** [1] - 20:5
**sentence** [19] - 9:4,
17:20, 18:13, 19:4,
20:3, 20:13, 20:21,
20:22, 21:5, 26:13,
26:17, 26:19, 26:22,
26:24, 27:6, 28:8,
28:15, 40:13, 40:17
**sentencing** [3] -
40:14, 41:2, 42:16
**Sentencing** [4] -
17:13, 19:13, 19:20,
24:22
**serious** [6] - 10:23,
11:5, 11:10, 14:18,
17:17, 29:4, 30:7,
36:3
**seriously** [2] - 14:10,
36:21
**set** [1] - 21:6
**several** [3] - 28:24,
32:23, 37:9
**severe** [2] - 20:21,
26:24
**shared** [1] - 34:2
**shorthand** [2] - 11:8,
11:12
**sign** [1] - 41:24
**signed** [1] - 39:15
**significant** [1] - 31:10
**similar** [1] - 25:2
**simply** [1] - 13:6
**situation** [1] - 33:4
**six** [1] - 32:12
**small** [1] - 37:11
**Smith** [48] - 3:17, 3:18,
4:18, 6:12, 6:25,
10:17, 11:17, 12:16,
13:10, 21:9, 22:11,

23:5, 23:10, 24:14,
24:23, 25:6, 25:18,
25:21, 26:3, 28:20,
29:14, 29:23, 30:3,
30:11, 31:18, 31:22,
31:24, 32:2, 32:8,
32:13, 32:19, 32:24,
34:9, 34:14, 34:15,
35:8, 37:2, 37:5,
37:9, 37:20, 37:24,
37:25, 38:12, 39:4,
39:15, 39:21, 40:25,
41:23
**SMITH** [2] - 1:8, 3:16
**Smith's** [7] - 6:4,
31:15, 31:18, 32:7,
34:5, 34:12, 34:22
**snorted** [1] - 32:10
**snorting** [1] - 37:13
**so-called** [2] - 17:13,
18:24
**solely** [1] - 35:18
**son** [3] - 33:9, 33:16,
33:23
**sorry** [1] - 21:25
**sort** [2] - 5:6, 29:21
**South** [1] - 4:7
**special** [2] - 18:24,
19:9
**specialty** [1] - 36:17
**specified** [1] - 24:20
**speedy** [1] - 7:4
**Spirit** [1] - 33:18
**spoken** [1] - 34:7
**stage** [1] - 7:10
**stand** [1] - 3:11
**state** [2] - 3:14, 37:23
**statement** [12] - 21:22,
22:4, 22:7, 22:12,
22:15, 22:18, 23:6,
31:2, 37:3, 37:4,
38:7, 38:22
**statements** [3] - 3:22,
9:17, 38:18
**STATES** [2] - 1:2, 1:4
**states** [2] - 12:14, 13:7
**States** [9] - 2:3, 7:4,
10:24, 11:22, 12:23,
13:17, 17:10, 19:18,
26:9
**States'** [1] - 20:14
**status** [1] - 25:19
**Statute** [2] - 17:10,
17:15
**statutory** [3] - 17:18,
18:12, 18:22
**stenographic** [1] -
43:8
**still** [3] - 9:23, 30:4,
38:12
**Street** [4] - 1:12, 2:5,
2:8, 31:15
**studied** [1] - 35:25
**subject** [5] - 3:21,

18:4, 18:11, 18:19,
30:4
**subpoena** [1] - 8:13
**Subsections** [2] -
10:25, 11:23, 12:24
**subsequently** [1] -
36:9
**substance** [38] -
10:19, 10:22, 11:4,
11:19, 11:21, 12:2,
12:18, 12:21, 13:4,
13:11, 13:14, 13:20,
14:13, 14:16, 14:17,
14:20, 15:3, 15:6,
15:7, 15:8, 15:16,
15:19, 15:20, 16:6,
16:9, 16:10, 17:16,
18:3, 18:10, 18:19,
34:25, 35:9, 35:21,
36:17
**substantial** [2] -
30:14, 36:12
**suffered** [1] - 36:2
**sufficient** [2] - 29:16,
30:12
**suggestion** [1] - 8:20
**Suite** [2] - 2:5, 2:8
**summarize** [1] - 31:11
**summary** [5] - 21:21,
23:4, 23:9, 37:3,
38:4
**Summerdale** [5] -
10:16, 11:16, 12:15,
13:8, 31:16
**supervised** [8] -
17:23, 17:24, 18:6,
18:7, 18:15, 18:16,
19:6, 19:7
**supervision** [1] - 40:5
**suppress** [2] - 22:10,
22:12
**suppression** [1] -
22:17
**Supreme** [2] - 19:17,
19:18
**surrounding** [1] -
16:23
**swallowing** [1] - 37:12
**sweating** [1] - 36:7
**sworn** [3] - 3:12, 3:13,
3:19
**symptoms** [2] - 35:25,
36:5
**synthetic** [3] - 35:10,
35:12, 35:19

**T**

**tail** [1] - 29:21
**Taylor** [1] - 2:4
**TAYLOR** [12] - 6:8,
23:8, 25:25, 31:4,
31:7, 31:13, 40:20,
41:3, 41:8, 41:15,

6

42:4, 42:11
**term** [5] - 16:20, 17:18, 18:4, 18:20, 29:4
**terms** [3] - 24:13, 25:22, 26:7
**testify** [5] - 8:5, 8:14, 8:18, 8:19, 8:21
**testimony** [2] - 29:7, 29:8
**THE** [142] - 1:2, 1:2, 1:15, 1:24, 3:14, 3:18, 3:24, 3:25, 4:5, 4:9, 4:11, 4:12, 4:18, 4:21, 4:22, 4:25, 5:2, 5:4, 5:5, 5:8, 5:9, 5:12, 5:13, 5:16, 5:17, 5:19, 5:20, 5:22, 5:23, 6:2, 6:3, 6:10, 6:16, 6:18, 6:19, 6:22, 7:7, 7:13, 7:14, 7:20, 7:21, 7:25, 8:2, 8:9, 8:10, 8:15, 8:22, 8:23, 9:7, 9:8, 9:15, 9:16, 9:21, 9:22, 9:25, 10:2, 10:5, 10:6, 10:9, 10:10, 11:7, 11:8, 12:11, 12:12, 13:22, 13:23, 14:2, 14:3, 14:23, 14:24, 16:2, 16:3, 16:14, 16:15, 16:17, 16:18, 17:5, 17:6, 19:11, 19:12, 19:15, 19:16, 20:11, 20:12, 20:16, 20:17, 20:23, 20:24, 21:8, 21:9, 21:13, 21:14, 21:25, 22:13, 22:23, 22:24, 24:15, 25:6, 25:10, 25:11, 25:15, 25:23, 26:3, 26:11, 26:12, 26:20, 26:21, 27:3, 27:4, 27:7, 27:8, 27:15, 27:16, 27:25, 28:2, 28:5, 28:6, 28:9, 28:10, 28:18, 28:19, 30:17, 30:20, 30:21, 31:6, 31:12, 38:6, 38:9, 38:10, 38:15, 38:16, 38:23, 39:3, 39:5, 39:6, 40:8, 40:22, 41:5, 41:11, 42:6, 42:10, 42:13
**themselves** [1] - 33:13
**therefore** [1] - 26:25
**THIS** [1] - 1:24
**Thomas** [1] - 2:11
**THOMAS** [1] - 3:9
**threatened** [1] - 21:10
**threats** [1] - 27:20
**three** [2] - 17:23, 24:23
**tissue** [1] - 37:11

**Title** [4] - 11:22, 12:23, 12:25, 13:16
**today** [11] - 3:8, 5:11, 8:24, 9:9, 9:24, 22:5, 25:14, 27:17, 30:18, 38:11, 39:9
**today's** [1] - 25:19
**took** [4] - 12:8, 33:6, 37:16, 37:21
**topic** [2] - 25:5, 25:17
**total** [1] - 19:4
**totaling** [1] - 19:8
**toxicologist** [1] - 36:16
**toxicology** [1] - 35:20
**transcript** [1] - 43:11
**TRANSCRIPT** [3] - 1:18, 1:19, 1:24
**transferred** [1] - 33:19
**treated** [4] - 4:23, 5:3, 5:6, 34:7
**treating** [1] - 29:8, 30:9, 35:24
**treatment** [1] - 33:20
**trial** [17] - 6:25, 7:5, 7:15, 8:3, 8:11, 8:17, 8:25, 9:3, 9:20, 14:6, 30:3, 30:15, 31:8, 38:13, 39:10, 41:20, 42:2
**tried** [2] - 32:14, 32:19
**triggers** [1] - 29:20
**Troy** [1] - 32:25
**truthfully** [1] - 3:23
**try** [1] - 31:11
**two** [3] - 17:8, 22:2, 32:25

## U

**U.S** [2] - 2:4, 2:7
**u.S.P.O** [1] - 1:11
**ultimate** [1] - 40:12
**unable** [4] - 32:17, 32:18, 32:20, 32:21
**unanimous** [2] - 7:19, 15:14
**under** [18] - 3:20, 4:19, 5:9, 7:3, 12:13, 12:22, 13:5, 15:10, 15:24, 18:11, 21:3, 24:21, 34:21, 38:2, 41:6, 41:12, 41:14, 42:14
**understandings** [1] - 27:19
**UNITED** [2] - 1:2, 1:4
**United** [10] - 2:3, 7:3, 10:24, 11:22, 12:23, 13:17, 17:10, 19:18, 20:14, 26:9
**unknown** [1] - 37:8
**unquote** [1] - 37:17
**untreated** [2] - 36:4,

36:23
**untruthfully** [1] - 27:11
**up** [5] - 17:23, 18:6, 18:15, 26:18, 42:15
**US** [1] - 9:18
**usual** [1] - 37:10

## V

**valid** [1] - 16:11
**verdict** [1] - 30:15
**verified** [1] - 21:23
**victim** [1] - 15:24
**violation** [7] - 10:24, 11:22, 12:23, 13:16, 15:11, 18:2, 18:9
**violations** [1] - 17:11
**voluntarily** [3] - 22:15, 22:19, 39:12
**vs** [1] - 1:7

## W

**waive** [2] - 9:10, 38:13
**Waiver** [1] - 24:25
**waiver** [2] - 25:2, 42:2
**waiving** [1] - 8:25
**Ward** [1] - 35:23
**Warnings** [3] - 21:24, 22:7, 37:2
**warrant** [2] - 34:11, 34:13
**water** [1] - 32:20
**Wednesday** [2] - 1:13, 40:15
**Western** [2] - 2:12, 41:20
**white** [2] - 34:19, 35:5
**win** [1] - 30:4
**wish** [2] - 9:23, 38:12
**withdraw** [1] - 27:2
**WITHOUT** [1] - 1:24
**WITNESS** [61] - 3:24, 4:3, 4:7, 4:11, 4:21, 4:25, 5:4, 5:8, 5:12, 5:16, 5:19, 5:22, 6:2, 6:15, 6:18, 6:21, 7:7, 7:13, 7:20, 7:25, 8:9, 8:15, 8:22, 9:7, 9:15, 9:21, 9:25, 10:5, 10:9, 11:7, 12:11, 13:22, 14:2, 14:23, 16:2, 16:14, 16:17, 17:5, 19:11, 19:15, 20:11, 20:16, 20:23, 21:8, 21:13, 22:23, 25:10, 25:15, 26:11, 26:20, 27:3, 27:7, 27:15, 27:25, 28:5, 28:9, 28:18, 30:20, 38:9, 38:15, 39:5
**witnesses** [5] - 8:3,

8:6, 8:12, 8:13, 31:20
**words** [3] - 14:17, 16:12, 19:3
**worse** [2] - 37:16, 37:20

## Y

**yard** [2] - 32:7, 37:22
**year** [4] - 18:13, 18:20, 29:20, 30:16
**years** [18] - 12:22, 13:5, 15:22, 15:24, 17:19, 17:21, 17:23, 18:5, 18:6, 18:11, 18:13, 18:14, 19:6, 19:7, 19:17, 19:18, 38:2, 38:3
**yourself** [1] - 9:11

## Z

**Ziploc** [1] - 34:21